(No. 11347.—Writ awarded.)
JOSEPH SWAGER, Petitioner, *vs.* J. F. GILLHAM, Judge, Respondent.

*Opinion filed May 14, 1917.*

1. MANDAMUS—*what is a proper signing of mandamus petition.* Where a petition for *mandamus* is subscribed and sworn to by the petitioner, although his affidavit and signature appear below the signature of his counsel, the petition is sufficiently signed.

2. SAME—*mandamus is a proper remedy to compel expunging of void order by court.* Where the circuit court has entered a void order setting aside a judgment releasing the petitioner from custody in a *habeas corpus* proceeding, a petition for *mandamus* to compel the court to expunge the void order is a proper remedy.

3. HABEAS CORPUS—*judgment in habeas corpus proceeding can not be reviewed in mandamus proceeding where court had jurisdiction.* Whether a judgment in a *habeas corpus* proceeding is warranted by the testimony or whether it is erroneous are questions which cannot be reviewed in a proceeding by petition for *mandamus* to compel the expunging of a void order setting aside said judgment, where the court had jurisdiction of both the subject matter and the parties in the former proceeding.

4. SAME—*habeas corpus is proper remedy where inmate has recovered from insanity but authorities have failed to release him.* A writ of *habeas corpus* is a proper remedy where a prisoner in a hospital for the criminal insane has fully recovered his sanity but the authorities have failed to release him, as he is entitled to his discharge even though the medical superintendent of the asylum

and the board of administration have failed or neglected to adjudge him a fit subject to be discharged, and said authorities are bound to act in such case without a demand or request that the prisoner be released.

5. SAME—*circuit judge cannot, in vacation, enter order setting aside a judgment in a habeas corpus proceeding.* The circuit court or judge who has rendered a judgment in a *habeas corpus* proceeding cannot, after the term has adjourned and during the vacation, vacate or set said judgment aside.

ORIGINAL petition for *mandamus.*

J. FRED GILSTER, and WILLIAM H. SCHUWERK, for petitioner.

EDWARD J. BRUNDAGE, Attorney General, and EDWARD C. FITCH, for respondent.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a petition of Joseph Swager praying a writ of *mandamus* against J. F. Gillham, one of the judges of the circuit court of Randolph county, commanding him to expunge a certain order entered in vacation in a *habeas corpus* proceeding in the Randolph county circuit court. The petition alleges said Joseph Swager was on July 8, 1914, tried in the criminal court of Cook county for murder, and that the jury found by their verdict he was insane at the time of the commission of the homicide and had not entirely and permanently recovered from such insanity. Thereupon said criminal court entered an order that said Joseph Swager be, and he was, sentenced to the Chester State Hospital at Chester, Illinois, and "delivered to the superintendent of the said Chester State Hospital, and the said superintendent hereby required and commanded to take the body of the said defendant, Joseph Swager, and confine him in said Chester State Hospital in safe and secure custody until restored to his right mind and be adjudged by the medical superintend-

ent thereof and the board of commissioners of public chari-
ties a fit subject to be discharged." The petition alleged
the petitioner was delivered to Jerome L. Harrell, superin-
tendent of the Chester State Hospital, and has been there
detained since; that on November 18, 1916, one of the ju-
dicial days of the September, 1916, term of the circuit court
of Randolph county, Illinois, petitioner filed in said court
a petition for a writ of *habeas corpus,* entitled "Joseph
Swager *vs.* The Superintendent of Chester State Hospital;"
that the respondent, Jerome L. Harrell, superintendent of
the said Chester State Hospital, entered his appearance and
made his return to said writ in person in said court before
Judge Gillham, the presiding judge of said court; that a
hearing was had, at which said medical superintendent, Je-
rome L. Harrell, testified that in his opinion the petitioner
had fully recovered his sanity and was a fit subject to be
discharged from custody; that he had conferred with Dr.
Zeller, State alienist and member of the board of commis-
sioners of public charities, and that Dr. Zeller informed re-
spondent that in his opinion petitioner had recovered his
sanity and was a fit subject to be discharged from custody;
that respondent testified he had notified the board of com-
missioners of public charities of the *habeas corpus* proceed-
ing about ten days before the hearing. The petition set out
a letter from Dr. Zeller to one of petitioner's counsel, in
which the doctor states he does not think he ought to appear
in the case although he is deeply interested. The letter
further stated it was not the policy of the board to oppose
*habeas corpus* proceedings or to interpose its official station
and influence, but that Dr. Harrell and his staff were com-
petent witnesses. At the conclusion of the hearing, and on
November 18, 1916, the court rendered judgment discharg-
ing petitioner from the Chester State Hospital. The judg-
ment recites the court heard the testimony of Dr. Harrell,
superintendent of the Chester State Hospital, Dr. F. A.
Stubblefield, assistant superintendent, and H. L. Wooten,

supervisor of said hospital. Counsel for petitioner say in their brief that Dr. Harrell requested the court to permit him to not immediately discharge petitioner but to keep him a few days until an opportunity was afforded to find employment for him, and that the court indicated he might do this. On that day, November 18, 1916, an order was entered adjourning the circuit court of Randolph county until court in course. The petition further avers that after November 18, 1916, and before December 22, 1916, the judge who presided at the *habeas corpus* hearing telephoned the superintendent of the Chester State Hospital to detain petitioner until he could send another order expunging the judgment of November 18, 1916; that on December 22, 1916, and during the vacation of said circuit court, said judge sent an order to be filed and entered of record in the records of said court ordering and directing the judgment entered November 18, 1916, discharging Joseph Swager from the Chester State Hospital, be expunged from the record, vacated, annulled and set aside. The writ of *mandamus* is prayed commanding Judge Gillham to expunge this last mentioned order from the records of said circuit court of Randolph county.

Respondent demurred to the petition, and assigned as grounds of demurrer (1) that the petition is not signed by petitioner or in his name; (2) that the petition does not show the circuit court of Randolph county had jurisdiction to entertain the petition for a writ of *habeas corpus* and to enter the order set out in the petition bearing date of November 18, 1916, discharging the petitioner. Other grounds of a highly technical character are assigned as causes for demurrer.

The petition is subscribed and sworn to by the petitioner. His affidavit and signature appear below the signature of his counsel to the petition but is a sufficient signing of the petition.

If the court had jurisdiction of the *habeas corpus* proceeding and of the parties its judgment is not void, and whether it was right or wrong cannot in this proceeding be inquired into. Section 7 of the act for the location, organization and management of an asylum for insane criminals provides that when a person is acquitted on a trial for murder, and some other offenses, on the ground of insanity, "the judge of the court in which such trial is had shall order his safe custody and removal to such asylum, where he shall remain until restored to his right mind and be adjudged by the medical superintendent thereof, and the board of commissioners of public charities a fit subject to be discharged." Paragraph 284 of the Criminal Code provides that a lunatic or insane person shall not be found guilty of any crime if the crime charged was committed in the condition of insanity. If upon the trial it appears from the evidence that the crime was committed as charged but that at the time it was committed the person charged was a lunatic or insane the jury shall so find by their verdict, and further find whether such person has or has not entirely and permanently recovered from such lunacy or insanity. If the jury find he has not entirely and permanently recovered, the court shall cause such person to be taken to a State hospital for the insane and there kept in safety until he shall have fully and permanently recovered. At the trial of petitioner in the criminal court of Cook county for the crime of murder the jury found he committed the homicide, that he was insane at the time he committed it and had not entirely and permanently recovered from such insanity. He was by the judgment of the court committed to the asylum for insane criminals at Chester, to be there kept in custody "until restored to his right mind and be adjudged by the medical superintendent thereof and the board of commissioners of public charities a fit subject to be discharged."

It is contended by respondent that the circuit court of Randolph county had no jurisdiction to issue the writ of

*habeas corpus* until the medical superintendent of the asylum and the State board of administration, which succeeded to the powers and duties of the board of charities, had adjudged petitioner a fit subject to be discharged, or at least until a request for such action had been made upon such authorities and refused by them. Under the law and order of commitment the detention of petitioner was only lawful so long as he had not fully and permanently recovered his sanity. When he had fully and permanently recovered he was entitled to his discharge even though the medical superintendent of the asylum and the board of administration had failed or neglected to adjudge him a fit subject to be discharged. Said authorities had power, when he fully recovered from his insanity, to so determine and discharge him without the order of a court in a *habeas corpus* or other proceeding. Their neglect or refusal to act after such recovery could not make his detention lawful. They were charged by the law with keeping him in custody until he was fit to be discharged by reason of having fully recovered from his insanity. They were bound to know when he had recovered and to then release him from custody, and no demand or request is required to be made of them to act in the matter. The writ of *habeas corpus* is a proper remedy in such cases where the prisoner has fully recovered his sanity but the authorities charged with that duty have failed to release him. We are of opinion, therefore, the court had jurisdiction of the subject matter.

The petition avers that Jerome L. Harrell, superintendent of the Chester State Hospital, entered his appearance in person and made return to the writ and evidence was heard by the court; that said Jerome L. Harrell testified that in his opinion petitioner had fully recovered his sanity and was a fit subject to be discharged; that he had conferred with Dr. Zeller, alienist and member of the State board of administration, and that Dr. Zeller gave it as his opinion petitioner had recovered his sanity and was a fit

subject to be discharged. The judgment recites that in addition to the testimony of Dr. Harrell the court heard the testimony of Dr. Stubblefield, assistant superintendent of said hospital, and of H. L. Wooten, supervisor of said hospital, and the court found from the evidence that petitioner had fully recovered his mental faculties and he was ordered discharged. Whether the judgment was warranted by the testimony or whether it was erroneous, it was a judgment of a court of competent jurisdiction having jurisdiction of both the subject matter and the parties and cannot be reviewed in this proceeding but must be considered as a valid and binding judgment. (*People* v. *Petit,* 266 Ill. 628.) The court or judge who rendered it could not, after the term had adjourned and during the vacation between terms, vacate or set it aside. The powers of a judge of a circuit court in vacation are very limited and are defined by the statute, and do not include the power to make orders in vacation setting aside judgments rendered during term time. It is not claimed that any fraud or imposition was practiced on the court in the *habeas corpus* proceeding, but apparently the judge concluded, after the term had adjourned, that he had no jurisdiction to enter the order in the *habcas corpus* case, and for that reason made the order in vacation vacating, annulling and setting aside the judgment rendered in term time. This action was without authority of law and void, and the judgment remaining unreversed is in full force and effect. The void order has operated, however, to prevent the judgment being given effect by the release from custody of petitioner. In a case similar in principle the writ of *mandamus* was awarded commanding that a void order be expunged, in *People* v. *Petit, supra.*

The demurrer is overruled and the writ awarded.

*Writ awarded.*