(No. 25456.—         No. 25461.—

THE PEOPLE *ex rel.* William Blome *et al.* Appellees, *vs.* S. L. NUDELMAN, Director of Finance, *et al.* Appellants.— THE PEOPLE *ex rel.* Allied Bridge and Construction Company *et al.* Appellants, *vs.* S. L. Nudelman *et al.* Appellees.

*Opinion filed February 21, 1940.*

JOHN E. CASSIDY, Attorney General, (MONTGOMERY S. WINNING, MORTIMER PORGES, WILLIAM C. CLAUSEN, PHILIP J. SIMON, and JAMES J. TEBOREK, of counsel,) for S. L. Nudelman *et al.* appellants and appellees.

BENJAMIN F. J. O'DELL, for William Blome *et al.* appellees and appellants.

Mr. CHIEF JUSTICE WILSON delivered the opinion of the court:

February 20, 1939, this court awarded a writ of *mandamus* to William Blome and forty-six other construction contractors commanding the Director of Finance, the Auditor of Public Accounts and the State Treasurer to issue cash refunds, or credit memoranda, of the respective amounts of occupation taxes erroneously paid by the petitioners and erroneously collected by the Department of Finance. (*People v. Nudelman,* 371 Ill. 30.) Subsequently, the Director of Finance made partial cash refunds amounting to $14,768.49 to the petitioners in proportion to their claims, and issued credit memoranda aggregating $73,509.93 for their respec-

tive unpaid balances, insufficient money then remaining in the applicable appropriation to fully pay the claims, as directed by this court. In order to obtain the payment of the cash and the delivery of the credit memoranda, the petitioners' attorney executed a satisfaction piece, reciting that the judgment had been satisfied by payment of the cash refunds and the issuance of credit memoranda, as set forth, "And this judgment is being fully satisfied without prejudice to any right which any of said petitioners may have hereafter to the payment of a cash refund out of any future appropriation enacted by the legislature of this State for that purpose in liquidation of the credit memorandum accepted by such petitioner in satisfaction of this judgment." An act of the General Assembly, approved June 30, 1939, appropriated $100,000 to the Department of Finance, "For refunding amounts of Retailers' Occupational tax erroneously paid according to the rules and regulations of the Department of Finance in effect at the time of such payment." (Laws of 1939, p. 172.) The *Blome case* is again before us on an appeal from a judgment entered in a *mandamus* action arising in the circuit court of Cook county. July 31, 1939, the same forty-seven contractors who were in this court as petitioners in *People* v. *Nudelman*, 371 Ill. 30, filed their petition for *mandamus* to compel the Director of Finance, the Auditor and the Treasurer to redeem, in cash, and pay them the amounts due for tax refunds as evidenced by the credit memoranda aggregating $73,509.93 issued by the Department of Finance. Consolidated for opinion with this cause, No. 25456, is another cause, No. 25461, instituted in the circuit court on a later date, August 2, 1939, by the Allied Bridge and Construction Company, together with thirty-two other construction contractors who filed their petition for a writ of *mandamus* to compel the payment of refunds to them, amounting to $68,408.13, paid as taxes through a mistake of fact and error of law of the Department of Finance. To the written demand for refunds by the petitoiners in both causes, the

Department of Finance replied it did not contemplate making refunds to any taxpayer "who may or may not have a credit memorandum where such overpayment of tax resulted from the taxpayer paying a tax in accordance with an existing rule or regulation which was revised subsequent to the payment of such taxes." The petitioners in a third appeal now pending in this court (No. 25440, *People* v. *Nudelman*), were, it appears, on July 27, 1939, awarded a writ directing refunds to them of $3841.49 from the appropriation of $100,000. Next, on August 12, the circuit court, in the *Blome case,* (No. 25456,) commanded the defendants to approve the claims of the petitioners and to make cash refunds to them in the amount of $73,509.93, out of the money appropriated by the General Assembly, "for refunding erroneous tax payments as provided in section 6 of the Retailers' Occupation Tax act." On August 15, the circuit court denied the writ of *mandamus* sought in cause No. 25461, but ordered the Department of Finance to hold the unexpended and *unmandamused* amount of the fund, namely, $22,648.58, pending the final disposition of the cause. The court further ordered that credit memoranda of amounts agreed to be due petitioners be issued and delivered to their attorney, and as to disputed amounts, if any, that a hearing be had to determine the amounts of refunds due on which credit memoranda should then be issued. In short, out of the appropriation of $100,000 made in 1939, $22,648.58 remains intact after providing for the successive awards of $3841.49 in cause No. 25440, and $73,509.93 in cause No. 25456, and the denial of the cash refunds sought in cause No. 25461. The problem confronting this court is the determination of the relative rights of the respective claimants in causes No. 25456 and No. 25461 if they are, respectively, entitled to the issuance of writs of *mandamus*.

The decisive issue made by the pleadings in each action is whether there is an appropriation out of which petitioners' claims can be paid. Section 6 of the Retailers' Occu-

pation Tax act (Ill. Rev. Stat. 1939, chap. 120, par. 445, p. 2673) provides: "If it shall appear that an amount of tax, penalty or interest has been paid which was not due under the provisions of this act, whether as the result of a mistake of fact or an error of law, then such amount shall be credited against any tax due, or to become due, under this act from the person who made the erroneous payment, or such amount shall be refunded to such person by the Department." Article 19 of the departmental rules captioned "Credit for overpayment," provides, in part: "Where a taxpayer under the Retailers' Occupation Tax act pays to the Department of Finance an amount of tax, penalty or interest not due under the provisions of the act, either as the result of a mistake of fact or an error of law, such taxpayer should file claim for credit on the form provided by the department for that purpose. In cases where claim for credit is approved, the department will issue a credit memorandum in the amount of the overpayment, which credit may be applied by the taxpayer in satisfaction of subsequent tax liability." Section 6, *supra*, it has been decided, (*People* v. *Nudelman*, 370 Ill. 237,) allows a refund or credit to persons who have paid the tax under a mistake of law or fact, as here, irrespective of the tax liability on the part of others, and where a credit would be of no value a refund should be allowed. Defendants maintain, however, that the appropriation passed by the legislature in 1939 is restricted in its use to refunds for overpayments under existing rules and regulations. Illustrating their argument supporting this contention, they assert that a taxpayer engaged in making sales in interstate commerce who pays a tax on such sales would be making an erroneous payment under the law as interpreted by the rules and regulations of the Department of Finance and, hence, would be entitled to a refund out of this appropriation. Similarly, it is said that the appropriation is available for making a refund where a taxpayer through an error in computation under the exist-

ing rules and regulations pays more than is due. Defendants argue, accordingly, that the appropriation has no application where the rules and regulations of the department, in effect at the time of such payment and under which the tax was paid, were later (*Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600) found to be erroneous. The inescapable fact remains that each petitioner did pay a tax not due under the law. The language of the refunding statute is free from ambiguity and must be given effect by the courts. Had the legislature intended to restrict the use of the $100,000 to refunding erroneous payments in the suppositious cases referred to by the defendants, appropriate language to accomplish its purpose would undoubtedly have been incorporated in the appropriation act.

An additional argument is advanced in support of the contention that petitioners' claims cannot be paid out of the $100,000 appropriation. By appropriate averments in their answers the defendants challenged the right of the petitioners to any part of this appropriation for the reason that the first section of a separate appropriation bill, Senate Bill No. 500, appropriated $375,361.96 for the repayment to certain named persons, including petitioners, of the amounts erroneously paid to the State as payments under the Retailers' Occupation Tax act. Section 2 of the same bill appropriated $1,000,000 for refunding amounts of retailers' occupation taxes erroneously paid by persons entitled to such refunds under the provisions of section 6 of the statute. Senate Bill No. 500 was vetoed by the Governor and, hence, did not become a law. (*People* v. *Hughes,* 372 Ill. 602.) It is argued, here, that the General Assembly, by making specific provision for payment to the petitioners in Senate Bill No. 500, thereby expressed its intention that credit memoranda were not to be redeemed in cash from the appropriation of $100,000 passed by the legislature and approved by the Governor. Speculation respecting the legislative intent, as disclosed in Senate Bill

No. 500, would be academic, if not futile. Manifestly, the vetoed bill did not impair plaintiffs' rights to refunds out of the appropriation bill actually enacted into law. A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions that intent will prevail without resorting to other aids for construction. (*People* v. *West Side Trust and Savings Bank*, 362 Ill. 607.) Section 6 of the Retailers' Occupation Tax act provides for refunds and the General Assembly in 1935, 1937 and, again, in 1939, has made successive appropriations of $100,000 for the purpose of refunding erroneous retailers' occupation tax payments. The manifest object of the appropriation act of 1939 is the refunding of erroneous payments in order to render effective, in part at least, the mandate of section 6 of the statute.

The defendants contend that issuance of the writs would promote substantial injustice, or create confusion and disorder. A like contention was decided adversely to them in *People* v. *Nudelman*, 370 Ill. 237. Where the petitioner shows a clear legal right to the writ of *mandamus* the court has no discretion with respect to the granting or refusal of the writ. (*People* v. *Nudelman*, 371 Ill. 30; *People* v. *Nudelman*, 370 id. 237; *People* v. *Kelly*, 361 id. 54.) *Mandamus* is the proper remedy to compel the issuance of a warrant for refunding taxes erroneously paid to the State, where a statute expressly makes it the duty of the Department of Finance to refund such payments. (*People* v. *Nudelman*, 370 Ill. 237.) Petitioners' claims have been definitely established by the decisions of this court in *Herlihy Mid-Continent Co.* v. *Nudelman, supra; People* v. *Nudelman*, 370 Ill. 237, and *People* v. *Nudelman*, 371 id. 30. The provision for the refund is explicit and is as mandatory as that for the payment of the tax in the first instance. (*People* v. *Nudelman*, 371 Ill. 30; *People* v. *Orrington Co.* 360 id. 289.) The amount due the petitioners is not in controversy, they come squarely within the pro-

visions of section 6 of the Retailers' Occupation Tax law, are among the beneficiaries entitled to resort to the appropriation of $100,000 passed by the General Assembly in 1939, and, since credits against future taxes would be of no value to them, entitled to refunds in cash. Here, an award of the writs by directing payment of obligations of the State will tend to promote substantial justice. To the extent the money is available to pay the claims, there is no question of discretion involved, and *mandamus* is, therefore, the proper remedy.

The pleadings disclose that the fund appropriated by the legislature had in it sufficient to completely refund the taxes amounting to $73,509.93 illegally exacted from the petitioners in cause No. 25456, the day judgment was rendered in their favor. On the other hand, it appears that when judgment was subsequently rendered in cause No. 25461, the amount remaining in the fund, $22,648.58, was insufficient to fully pay the claims of the petitioners therein. For the reason that these petitioners are not now subject to the tax, and credit memoranda to be applied on future taxes would be of no avail to them, the balance remaining in the appropriation should have been exhausted by ordering its payment in proportion to their respective claims, subject, however, to any prior rights. They are, of course, entitled to credit memoranda for the balance due them for refunds but which cannot now be redeemed in cash.

The judgment of the circuit court of Cook county in cause No. 25456 is affirmed. The judgment in cause No. 25461 is reversed and the cause is remanded to that court, with directions to enter a decree in accordance with this opinion.

No. 25456—*Judgment affirmed.*

No. 25461—*Reversed and remanded, with directions.*