# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**_Perkins v. Quinn_, 2012 IL App (1st) 113165**

---

| | |
|---|---|
| Appellate Court Caption | RAYMOND PERKINS, JR., as Executor of the Estate of Herbert J. Perkins, Plaintiff-Appellant, v. PATRICK J. QUINN, Governor of the State of Illinois; DAN RUTHERFORD, Treasurer of the State of Illinois; and JUDY BAAR TOPINKA, Comptroller of the State of Illinois, Defendants-Appellees. |
| District & No. | First District, First Division <br> Docket No. 1-11-3165 |
| Rule 23 Order filed <br> Rule 23 Order withdrawn <br> Opinion filed | June 25, 2012 <br><br> July 18, 2012 <br> July 23, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendants, the Governor, Treasurer and Comptroller of the State of Illinois, could not be compelled to refund plaintiff's overpayment of his decedent's Illinois estate taxes with interest, since no appropriated funds were available to pay the refund, there was no statutory authority for the payment of interest on the refund due, and the trial court had no authority to issue a writ of *mandamus* against defendants. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-P-6904; the Hon. Susan M. Coleman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Henehan Donovan & Isaacson, Ltd., of Chicago (Edward V. Donovan, Jr., and James J. McManus, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Timothy K. McPike, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Justices Hall and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Raymond Perkins, Jr., as executor of the estate of Herbert J. Perkins, filed a complaint for issuance of a writ of *mandamus* against defendants Patrick J. Quinn, Dan Rutherford and Judy Baar Topinka, in their official capacities as Governor, Treasurer and Comptroller of the State of Illinois, respectively. Plaintiff alleged defendants were improperly withholding $111,870 he had overpaid in Illinois estate tax. He sought to compel defendants to refund his overpayment and pay 10% interest on the refund. The circuit court dismissed plaintiff's motion with prejudice. On appeal, plaintiff argues the court erred in dismissing his complaint because (1) his deposit of monies with the Treasurer to pay estate tax per the directive of the Illinois Attorney General was impressed with a trust of which the Treasurer was the constructive trustee; (2) *mandamus* is the appropriate remedy to require an officeholder to perform duties imposed on that office by law; (3) plaintiff does not have an adequate remedy at law; and (4) he is entitled to interest on the monies the Treasurer had refused to return. We affirm.

¶ 2                                  Background

¶ 3     Herbert Perkins died in 2006. In June 2007, as executor of Perkins' estate, plaintiff filed a 2006 Illinois estate tax and generation-skipping tax return form showing $973,636 due in estate tax. He paid the tax by depositing $973,636 with the office of the Cook County treasurer as required by section 6(e) of the Illinois Estate and Generation-Skipping Transfer Tax Act (the Act) (35 ILCS 405/6(e) (West 2010)). Plaintiff's attorneys had obtained the $976,636 tax figure from the Illinois Attorney General's office pursuant to the directions on the tax return form, which stated:

    "The Attorney General's office has acquired a computer program that will make the computation [of Illinois estate tax], rather than the preparer performing numerous trials to obtain a figure. The preparer may contact our Office by mail or phone *** or may

access the program at our website.”[1]

¶ 4      A few days after plaintiff paid the tax, the Attorney General's office issued plaintiff a certificate of discharge and determination of tax showing the actual amount of tax due was $846,652. Plaintiff had paid $126,984 more in tax than was due.

¶ 5      Pursuant to section 14 of the Act, if the tax paid is more than the amount due under the Act, "the State Treasurer shall refund the excess to the person entitled to the refund." 35 ILCS 405/14 (West 2010). In March 2010, plaintiff filed a petition for refund of the $126,984 overpayment.

¶ 6      In June 2010, following revaluation of the estate, plaintiff submitted an amended estate tax return showing that the estate tax due was actually $861,776 ($15,114 more than the tax amount stated in the Attorney General's certificate of discharge) and his overpayment of $111,870 (rather than $126,984). Plaintiff filed an amended petition for refund of the $111,870. The Attorney General issued a supplemental certificate of discharge showing that plaintiff owed an additional $15,114 in tax and had paid that amount.

¶ 7      In February 2011, plaintiff filed a *mandamus* complaint against the Illinois Governor, Treasurer and Comptroller because he had not received the $111,870 refund of his overpayment. He alleged his attorneys had relied on the Attorney General's calculations in preparing the estate's tax return and, as a result, he had submitted a tax overpayment; he was due $111,870 for his overpayment; the $111,870 was being wrongfully withheld from him by the Treasurer, either singly or in concert with one or both of the other defendants; defendants were holding the $111,870 in trust for him; and he was entitled to both refund of the $111,870 and 10% interest thereon. Plaintiff sought a *mandamus* order compelling defendants to refund him the $111,870 overpayment plus 10% annual interest.

¶ 8      Defendants filed a motion to dismiss the complaint pursuant to sections 2-619(a)(1) and (a)(9) of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(1), (9) (West 2010)). They stated the Treasurer at no time denied plaintiff's petition for refund or disputed the amount of the refund; the Treasurer had approved a partial refund of $32,380.92; the Treasurer intended to refund the total amount of the overpayment to plaintiff "as soon as possible"; "due to lack of sufficient appropriations for estate tax refunds, the Treasurer's Office cannot pay off existing estate tax refund obligations [such as plaintiff's] in a single payment"; "[i]nstead, the Treasurer now pays portions of the refunds due for approved refund requests, with the process resulting in complete payment, but just not in a single check"; and, although the Act entitled plaintiff to a refund of his tax overpayment, the Act did not mandate the time and manner in which the Treasurer was to pay the refund. Defendants argued plaintiff's complaint should be dismissed because he had an adequate remedy at law; equitable relief is barred in tax relief cases; and neither statute nor case law allows the Treasurer to pay interest on an estate tax overpayment.

¶ 9      Defendants submitted a supporting affidavit from Maureen Lydon, the general counsel

---

[1]Pursuant to section 16(a) of the Act, the Attorney General exercises general supervision over the assessment and collection of taxes provided in the Act and "shall determine and assess the tax as provided for in this Act." 35 ILCS 405/16(a) (West 2010).

of the Treasurer's office. Lydon explained the Treasurer had made partial payment because the appropriations were insufficient to allow for full refund. She stated there was over $23 million due in estate tax refunds in 2010 and almost $6 million in 2011; there were "several" estates due refunds which had been waiting longer than plaintiff for a refund; and the Treasurer sought and continued to seek supplemental appropriations to address the issue.

¶ 10    In April 2011, the Treasurer paid plaintiff $32,380.92 toward the tax refund. The balance still to be paid to plaintiff is $79,489.08.

¶ 11    On October 7, 2011, the court granted defendants' motion and dismissed the complaint with prejudice. It held that it did not have the authority to compel the performance of an act that the Treasurer had already undertaken to perform. It stated a writ of *mandamus* would issue if the Treasurer was refusing to perform its duties but the Treasurer was not refusing to perform its duties. Rather, the Treasurer had agreed and wanted to perform its duties but was unable to due to the lack of appropriations. The court held that the Act did not require a lump-sum payment of an estate tax refund and the court could not impose such a requirement on the Treasurer. It found no statutory provision allowing for payment of interest.

¶ 12    Plaintiff timely filed a notice of appeal on October 24, 2011.

¶ 13                                   Analysis

¶ 14                            1. Standard of Review

¶ 15    The court granted defendants' motion to dismiss as to all counts of the complaint pursuant to section 2-619 of the Code. A section 2-619 motion to dismiss admits the legal sufficiency of the complaint but raises defects, defenses or other affirmative matters that avoid the legal effect of or defeat a claim. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004); 735 ILCS 5/2-619(a) (West 2010). In reviewing a grant of a section 2-619 motion to dismiss, we must accept as true all well-pleaded facts in the plaintiff's complaint, draw all reasonable inferences from those facts in favor of the plaintiff and interpret all pleadings and supporting documents in the light most favorable to the plaintiff. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). The defect, defense or affirmative matter must be apparent on the face of the pleading attacked or be supported by affidavit. *Borowiec*, 209 Ill. 2d at 383. As with an appeal from a grant of summary judgment, we must consider "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). We review a section 2-619 dismissal *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003).

¶ 16                            2. Writ of *Mandamus*

¶ 17    The court dismissed plaintiff's *mandamus* complaint for lack of subject matter jurisdiction pursuant to section 2-619(a)(1), finding a writ of *mandamus* could not issue against defendants because they had no authority to immediately issue the refund to plaintiff.

Section 2-619(a)(1) allows for involuntary dismissal of an action where "the court does not have jurisdiction of the subject matter of the action." 735 ILCS 5/2-619(a)(1) (West 2010).

¶ 18     *Mandamus* is an extreme remedy, used to enforce, as a matter of right, a public officer's performance of his or her official duties where no exercise of discretion on the officer's part is involved. *Burris v. White*, 232 Ill. 2d 1, 7 (2009). In order to obtain a writ of *mandamus*, the requesting party must establish "a clear right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ." *Burris*, 232 Ill. 2d at 7. In this case, plaintiff asserts he has the right to immediate refund of his overpayment and defendants have the duty and authority to issue that refund.

¶ 19     Section 14 of the Act provides that, if the estate tax paid is more than the tax due under the Act, "the State Treasurer shall refund the excess to the person entitled to the refund." 35 ILCS 405/14 (West 2010). Plaintiff overpaid his estate tax and, thus, pursuant to section 14, has a clear right to a refund. And, under section 14, the Treasurer has a clear duty to pay him that refund. Concomitantly, since the Comptroller has the duty to issue payment from funds held by the Treasurer and to order disbursement of those funds (Ill. Const. 1970, art. V, §§ 17, 18), the Comptroller has a duty to issue the refund. However, as will be shown below, neither the Treasurer nor the Comptroller has the *authority* to issue that refund and, therefore, plaintiff's action for a writ of *mandamus* against them must fail.

¶ 20     Estate tax is paid to the treasurer of the county in which the estate has the most holdings. 35 ILCS 405/6(e)(1) (West 2010). The county treasurer then pays those tax receipts to the state treasurer. 35 ILCS 405/13 (West 2010). As with all monies paid into the state treasury, the tax receipts become part of the general revenue fund of the Treasury of the State of Illinois unless, by statute, the monies are ordered held apart in a separate fund. 30 ILCS 230/2 (West 2010). As defendants point out, a taxpayer can avoid having its taxes deposited into the general revenue fund by paying those taxes under protest pursuant to the State Officers and Employees Money Disposition Act (30 ILCS 230/1 *et seq.* (West 2010)). Plaintiff did not do that here.

¶ 21     The Illinois Constitution provides that, once monies are deposited into the general revenue fund, only the General Assembly is authorized to make appropriations for State expenditures of those funds. *American Federation of State, County & Municipal Employees v. Netsch*, 216 Ill. App. 3d 566, 567 (1991); Ill. Const. 1970, art. VIII, § 2(b). An "appropriation" is " 'the setting apart from public revenue a certain sum of money for a specific object.' " *Netsch*, 216 Ill. App. 3d at 567 (quoting *Illinois Municipal Retirement Fund v. City of Barry*, 52 Ill. App. 3d 644, 646 (1977)).

> "No money belonging to or left for the use of the State shall be expended or applied except in consequence of an appropriation made by law and upon warrant of the State comptroller. [Citation.] The comptroller is authorized, and indeed required, to refuse to draw a warrant if she determines that no appropriation or expenditure authority other than by appropriation is available to incur the obligation." *Netsch*, 216 Ill. App. 3d at 567 (citing Ill. Rev. Stat. 1989, ch. 127, ¶ 171(a)).

¶ 22     A specific appropriation bill passed by the legislature is necessary in any instance where state funds are to be disbursed. *Netsch*, 216 Ill. App. 3d at 568 (following *Quinn v.*

*Donnewald*, 107 Ill. 2d 179, 191 (1985)). The comptroller cannot issue funds in the absence of an appropriation bill signed into law. *Netsch*, 216 Ill. App. 3d at 568; *Board of Trustees of Community College District No. 508 v. Burris*, 118 Ill. 2d 465, 477-79 (1987) (the Comptroller found to have properly refused to reimburse City Colleges of Chicago for funds City Colleges had to expend in providing statutorily mandated scholarships to veterans when the appropriation for the scholarship program proved to be underfunded; the Comptroller was not authorized to "override" the legislature's action in making reductions in the appropriations bill). Once state money has been received by the Treasurer and deposited into the general fund, "the constitution prevents its withdrawal except in pursuance of an appropriation made by law." *Netsch*, 216 Ill. App. 3d at 568.

¶ 23    Here, the legislature made appropriations for repayment of overpaid estate taxes in both 2010 and 2011 but, as defendants assert and plaintiff does not contest, those appropriations have been exhausted. The legislature made no 2012 appropriation for repayment of estate taxes. There are, therefore, no appropriation funds available for estate tax refunds.

¶ 24    Defendants agree that plaintiff is due a refund and state that the Treasurer fully intends to pay him that refund. They explain, however, that the Treasurer will pay the refund in installments as appropriation funds become available because there are no funds available from which to pay him in full. Given the number of other estates that are due a refund on their taxes and that requested their refunds before plaintiff, plaintiff might have to wait several years before he receives the full amount of his refund.

¶ 25    Plaintiff asks for a writ of *mandamus* ordering the Treasurer and/or Comptroller to issue the refund in one payment immediately. But, it being clear that the appropriations for estate tax refunds have been exhausted, a writ of *mandamus* cannot operate against these appropriations. *People ex rel. Henry Marble Co. v. Nudelman*, 374 Ill. 280, 285 (1940).

"[B]efore the Auditor of Public Accounts [now the Comptroller] may be directed by *mandamus* to issue and deliver warrants to anyone claiming payments from the State, it must be clearly shown that a proper appropriation has been made and that there are available funds in the appropriation, against which such warrants may be drawn." *People ex rel. Board of Trustees of the University of Illinois v. Barrett*, 382 Ill. 321, 348 (1943).

There are no available funds in the appropriations against which a warrant for plaintiff's estate tax refund can be drawn. Therefore, neither the Treasurer nor the Comptroller can be directed by *mandamus* to issue plaintiff his estate tax refund. Indeed, because there are no appropriation funds available, it would be unlawful for the Comptroller to issue such a warrant for payment of the refund. *Barrett*, 382 Ill. at 349 (citing Ill. Const. 1870, art. IV, §§ 17, 18, 19).[2]

¶ 26    Even if there were funds remaining or available in the appropriations, those funds would not necessarily be available for payment of plaintiff's refund until after the refunds due the other estates that filed for tax refunds before plaintiff filed his had been fulfilled. *Nudelman*, 374 Ill. at 285-86 (payment from appropriation fund in priority order by request date).

---

[2]There are four circumstances under which state funds can be disbursed without a specific appropriation but none apply here and plaintiff does not assert otherwise.

Further, although section 14 of the Act provides that the Treasurer shall refund any excess estate tax, it does not provide a time frame or manner in which that refund is to be made. 35 ILCS 405/14 (West 2010). Given that there are apparently many estates in the same situation as plaintiff, he is fortunate to have received even a partial payment. The Treasurer was under no duty to make a partial refund and could have decided to pay each estate in full, in order of request date, as the funds became available, with plaintiff's refund being toward the end of a very long list. At least, with a partial refund, plaintiff received something immediately.

¶ 27    The upshot is that there are no appropriation funds for refund of plaintiff's estate tax overpayment and, therefore, because neither the Treasurer nor the Comptroller has the authority for the expenditure of any fund(s) not appropriated to that particular purpose, a writ of *mandamus* cannot issue to force them to pay plaintiff his refund. See *Netsch*, 216 Ill. App. 3d at 568; *Adams v. Nudelman*, 375 Ill. 217, 219-20 (1940).

¶ 28    Notwithstanding plaintiff's argument to the contrary, it makes no difference that plaintiff relied on the Attorney General's advice in calculating the amount of estate tax. It makes no difference that plaintiff "did not contemplate" that, when he deposited his estate tax payment, the Treasurer would "retain [the overpayment] in the coffers of the State." No matter what plaintiff thought, how valid his claim or how unfair the situation, there is no way around the fact that, because there are no appropriation funds available, neither the Treasurer nor the Comptroller has the authority to pay plaintiff his refund immediately. As to the Governor, he has neither statutory duty nor authority to pay plaintiff his refund and plaintiff does not suggest otherwise. Accordingly, because no defendant has the authority to issue the requested refund, the circuit court correctly found that it had no authority to issue a writ of *mandamus* against defendants. We affirm the court's dismissal of the plaintiff's *mandamus* complaint for lack of subject matter jurisdiction pursuant to section 2-619(a)(1) with prejudice.

¶ 29                            3. Interest

¶ 30    The court dismissed plaintiff's request for interest pursuant to section 2-619(a)(9), finding there was no statutory authority for imposition of interest on the refund amount due plaintiff. Section 2-619(a)(9) allows for involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). In the context of section 2-619(a)(9), an "affirmative matter" is "something in the nature of a defense" which, although the moving party admits the legal sufficiency of the complaint, negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. (Internal quotation marks omitted.) *Van Meter*, 207 Ill. 2d at 367; *Borowiec*, 209 Ill. 2d at 383; *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999).

¶ 31    Plaintiff argues that, had he failed to pay the estate tax due, he would have been subject to a 10% penalty and, therefore, equity demands that he receive 10% annual interest on his refund. A taxpayer is not entitled to interest on a tax refund unless such interest is specifically authorized by statute. *Mannix v. Donnewald*, 187 Ill. App. 3d 472, 476 (1989) (citing *Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d 415, 423 (1960)). Here, as the circuit court noted, the Act does not provide for payment of interest on estate tax refunds.

Accordingly, in the absence of clear language imposing such liability, the State does not have to pay interest when excess funds are refunded to the estate. *Mannix*, 187 Ill. App. 3d at 481.

¶ 32 Plaintiff asserts the equity of the situation demands that he be compensated with interest on the refund to which he is entitled because the State wrongfully extracted and withheld the refund. There is nothing to show that, as plaintiff asserts, the State engaged in a deliberate course of wrongful conduct. Rather, the Attorney General made an error in calculating the estate tax due and plaintiff overpaid as a result. The Treasurer wants and intends to remedy that error by refunding the overpayment as required by statute, and only the lack of sufficient appropriations to satisfy the approximately $30 million in outstanding estate tax refunds is preventing this. We find no unjust enrichment by the State warranting imposition of a constructive trust or interest. See *Mannix*, 187 Ill. App. 3d at 483-84. The court properly dismissed plaintiff's claim for interest.

¶ 33                                                                                   Conclusion

¶ 34 For the reasons stated above, we affirm the decision of the circuit court dismissing plaintiff's complaint with prejudice.

¶ 35 Affirmed.